IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| RUTH SIMMONS, | ) | Case No. 9:08-3511-SB |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S ANSWERS TO RULE 26.03** |
| | ) | **INTERROGATORIES** |
| Versus | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendants. | ) | |

TO: LEE E. BERLINSKY, ATTORNEY FOR THE DEFENDANT

The Plaintiff, Ruth Simmons, hereby answers the following pursuant to Rule 26.03:

1) A short statement of the facts of the case:

**ANSWER:** On or about December 14, 2004, Ruth Simmons had an abnormal breast exam, specifically of her left breast, during her gynecological examination with Comprehensive Health performed by Doe and/or Bey. Ruth Simmons had not had a previous abnormal breast exam. Doe and/or Bey requested a "screening mammogram" even though the standard of care as a result of an abnormal finding required a diagnostic mammogram and biopsy be ordered, as breast cancer is common and may mimic benign disorders, the approach to all breast symptoms and findings is to conclusively exclude cancer.

The screening mammogram was performed on the same date, by Comprehensive Health technician Shockey and interpreted by Comprehensive Health radiologist Sherbert. The report read, "views of both breasts reveal dense breast parenchyma bilaterally which limits the sensitivity of the examination and could obscure a mass if present. I see no dominant mass." This was noted to be a baseline screen, and there was no noted communication to the radiologist that the patient had an abnormal breast exam. Mammogram results should not alter the decision to perform a biopsy.

Ruth Simmons returned on March 14, 2005, to Comprehensive Health, for the mammogram results and was seen by Bey. Bey ordered a breast ultrasound, when she should have ordered a biopsy.

1

The breast ultrasound was performed on April 5, 2005, at Beaufort Memorial Hospital for "lump in left breast," by Jackson and was signed by Blalock. The impression read, "Innumerable fairly well defined discrete hypoechoic nodular densities throughout the breast with markedly increased blood throughout the breast particularly associated with these nodules. The exact etiology remains elusive. Correlation with the patient's mammogram may be useful. Whether these represent some type of varicosity it is difficult to discern. Consideration for surgical consult might be given as well." The report is also noted to read, "CC: BEY, ANNETTE, MD."

Amy Wilson ("Wilson"), a Physician Services Analyst at BMH, has averred under oath that the results of the report were successfully delivered to Bey on April 7, 2005.

No record of the report appears in Comprehensive Health's files or records.

Bey failed to follow up on her order for an ultrasound, failed to obtain the results of the ultrasound that she ordered, failed to realize that it had not been sent to her, and further continued to fail to order a biopsy.

Ruth Simmons never received a follow up call from Bey or Comprehensive Health, nor from Jackson, Blalock or Beaufort Memorial concerning her condition.

Ruth Simmons actually made a follow up appointment on her own on and was finally seen by Benjamin Gaines, MD, ("Gaines") and Comprehensive Health on February 23, 2006. Gaines noted, "LT breast mass x 1 year, increased in size." Gaines further noted, "nodular mass 3 x 2 cm/fixed" Gaines noted that he reviewed the left breast ultrasound with the patient and also noted her left breast mass as "suspicious." Gaines ordered a diagnostic mammogram and an appointment for a surgical biopsy with Gordon E. Krueger, MD ("Krueger") of Coastal Carolina Surgical Associates, PA.

Gaines' request noted, "45 yr old female with LT breast mass x 1 year. Mass nodular ~ 3x2cm, please evaluate."

Another mammogram was performed, this one at Beaufort Memorial, on February 23, 2006.

The report noted that a marker was placed over the area of palpable abnormality in the inferomedial left breast, and compression spot images were obtained over the area of palpable abnormality. The impression read: "THE PALPABLE ABNORMALITY CORRESPONDS TO A 3 TO 4 CM AREA OF INCREASED DENSITY SOMEWHATNODULARAND WITH ILL DEFINED MARGINS POSTERIORLY. BREAST ULTRASOUND AND SURGICAL CONSULTATION ARE ADVISED." The report also notes that "prior films are at Comp Health and are not immediately available." It was reported by Blalock and signed by Jackson.

Krueger, on March 3, 2006, wrote back to Gaines and noted, "[i]t is certainly of significant concern with this mass appearing to be fixed to the chest wall...we will rapidly need to get an aspiration or core biopsy done in the next few days to prove that this is probably an advanced left breast cancer."

Another ultrasound was performed on March 3, 2006. The report read, "THERE IS A MULT-LOBULAR SOLID MASS IN THE RETROAREOLAR REGION HAVING INCREASED IN SIZE COMPARED TO *04/05/05.* BIOPSY IS ADVISED." This was also reported by Blalock and signed by Jackson.

Krueger noted on his March 3, 2006, progress notes, in part, "HIGHLY SUSPICIOUS MASS LEFT BREAST WITH SKIN FIXATION ACCESSORY BREAST NIPPLES BILATERALLY."

Ruth Simmons followed up at Comprehensive Health on March 7, 2006, and the notes read, "to see Dr. Krueger today and will probably have excision."

Ruth Simmons subsequently underwent a vacuum assisted core biopsy and clip localization at Beaufort Memorial on March 9, 2006, which revealed infiltrating ductal carcinoma.

Ruth Simmons further accepted a plan for treatment with neoadjuvant chemotherapy prior to having a primary excision.

Kreuger referred Ruth Simmons to Sea Island Cancer Center for neoadjuvant chemotherapy and placed a right subclavian Port-A-Cath on March 23, 2006 to facilitate chemotherapy.

The exam of Majd Chahin, MD at the Sea Island Cancer Center on April 12, 2006 revealed "left breast positive for 5x4 ~ cm mass fixed to the skin below the left areola with positive lymph nodes

3

in the left axilla." His impression was "Stage III breast cancer in a young female without any significant past medical history and subcoronallymph node, etiology unclear."

Ruth Simmons began neoadjuvant chemotherapy on April 12, 2006. Listed in order of occurrence, her complications from chemotherapy treatment from April 12, 2006, until her surgical admission for modified left radical mastectomy on December 7, 2006 were: back pain; nausea; decreased appetite; dry skin; movement hindered by Port-A-Cath site irritation; fatigue; arthralgias; heat intolerance; hospitalization at Beaufort Memorial for severe extremity pain and fever; persistent aches unresponsive to Percocet; right axilla cyst; hospitalization at Beaufort Memorial for neutropenic fever; significant edema of lower extremities; weakness; and others.

Chemotherapy agents utilized on Ruth Simmons during this time included: four cycles of Adriamycini Cytoxan; four cycles of Taxotere; two cycles of Gemzarl Navelbine and others.

Ruth Simmons was admitted to Beaufort Memorial on December 7, 2006 for "Left axillary sentinel node attempted biopsy followed by left modified radical mastectomy." She proceeded to have marked postoperative swelling and was returned to the operating room on December 8, 2006, for evacuation of left mastectomy hematoma with estimated blood loss of 400 ml of clot. She subsequently received a blood transfusion of two units. She was discharged on December 12, 2006.

Ruth Simmons had a Consult with Dr. Cynthia J. Bryant, Keyserling Cancer Center for radiation treatment at Beaufort Memorial Hospital, on January 9, 2007, which revealed a diagnosis of "invasive ductal carcinoma of the left breast, multicentric, Stage III."

Ruth Simmons continues to treat with Sea Island Cancer Center and Krueger, and has undergone additional rounds of chemotherapy.

Ruth Simmons, if treatment had been undertaken immediately and the standard of care been met, would have had Stage 0 or Stage I cancer, and would have survived and lived a normal life

span. As a direct and proximate result of the Defendant' deviations and delays, Ruth Simmons now has virtually no chance of long term survival of her advanced breast cancer.

2) The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony:

**ANSWER:** The Plaintiff reserves the right to call as a witness at the trial of this case any and all witnesses named by the Defendants, any and all treating medical providers who may testify to both lay and expert opinions, anyone appearing in the medical records or documents produced or made available for inspection by any party, and anyone otherwise identified. Further responding:

Ruth F. Simmons
Cleland Estates, Lot #2
361 County Shed Road
Burton, South Carolina 29906

Ms. Simmons is the Plaintiff in this matter and is expected to testify regarding her medical condition and treatment, injuries and damages together with any observations or opinions she may have.

Tony Washington
Cleland Estates Lot #2
361 County Shed Road
Burton, South Carolina 29906

Mr. Washington is Ms. Simmons' live-in boyfriend and care taker. He is expected to testify to the circumstances surrounding Ms. Simmons' medical condition and treatment, and the effects this had on Ms. Simmons, together with any opinions he may have as her care taker.

Patricia Frazier
Cleland Estates Lot #2
361 County Shed Road
Burton, South Carolina 29906

Ms. Frazier is Ms. Simmons' sister. She resides in the same household as Ms. Simmons and was present during the time which is the subject of this complaint. She is expected to testify to the circumstances Ms. Simmons' medical condition and the resulting effects on Ms. Simmons.

Majd Chahin, M.D.
Sea Island Cancer Center
Keyserling Cancer Center
1680B Ribaut Road
Port Royal, SC 29935

Dr. Chahin is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

    Alyssa Patterson, FNP
    Sea Island Cancer Center
    Keyserling Cancer Center
    1680B Ribaut Road
    Port Royal, SC 29935

Ms. Patterson is expected to testify regarding her treatment of Ms. Simmons together with any lay or expert opinions she may have.

    James M. Hall, M.D.
    Sea Island Cancer Center
    Keyserling Cancer Center
    1680B Ribaut Road
    Port Royal, SC 29935

Dr. Hall is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

    Cynthia Bryant, M.D.
    Radiation Oncologist
    Beaufort Memorial Hospital
    Keyserling Cancer Center
    1680 Ribaut Road
    Port Royal, SC 29935

Dr. Bryant is expected to testify regarding her treatment of Ms. Simmons together with any lay or expert opinions she may have

    Annette Bey, M.D.
    Beaufort –Jasper – Hampton Comprehensive Health Services
    721 Okatie Highway
    Ridgeland, SC 29936

Dr. Bey is a Defendant in this case and is expected to testify regarding her treatment of Ms. Simmons.

    Benjamin Gaines, M.D.
    Beaufort –Jasper – Hampton Comprehensive Health Services
    721 Okatie Highway
    Ridgeland, SC 29936

Dr. Gaines is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

William A. Jackson, M.D.
Beaufort Memorial Hospital
955 Ribaut Road
Beaufort, SC 29902

Dr. Jackson is a Defendant in this case and is expected to testify regarding his treatment of Ms. Simmons.

C. Phillip Blalock, M.D.
Beaufort Memorial Hospital
955 Ribaut Road
Beaufort, SC 29902

Dr. Blalock is a Defendant in this case and is expected to testify regarding his treatment of Ms. Simmons.

Patricia Shockey, M.D.
1320 Ribaut Road
Beaufort, SC 29935

Dr. Shockey is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions she may have.

T. Ray Sherbert, M.D.
Naval Hospital
1 Pinckney Boulevard
Beaufort, SC 29902

Dr. Sherbert is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

James Granger, M.D.
1320 Ribaut Road
Beaufort, SC 29935

Dr. Granger is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

Gordon Krueger, M.D.
Sea Island Cancer Center
1680B Ribaut Road
Port Royal, SC 29935

Dr. Krueger is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

Amy Wilson
955 Ribaut Road
Beaufort, SC 29902

Ms. Wilson is expected to testify regarding this matter together with any expert or lay opinions she may have.

Kevin O. Green, PTA, MLDT-CDT, ARS
Carolina Sportscare and Physical Therapy
1076 Ribaut Road, Suite 102
Beaufort, South Carolina 29902

Kevin Green is expected to testify regarding his treatment of Ms. Simmons together with any lay or expert opinions he may have.

Various Employees – Beaufort Memorial Hospital
955 Ribaut Road
Beaufort, SC 29902

These persons are expected to testify regarding their treatment of Ms. Simmons together with any lay or expert opinions they may have.

Various Employees – Beaufort – Jasper – Hampton Comprehensive Health Services
721 Okatie Highway
Ridgeland, SC 29936

These persons are expected to testify regarding their treatment of Ms. Simmons together with any lay or expert opinions they may have.

3) The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered):

**ANSWER:** In accordance with any scheduling order put in place, the Plaintiff reserves the right to call as an expert witness in this case any medical provider of the Plaintiff, any expert named or otherwise identified by the Defendant, and any other such expert later identified. These persons may testify as to all issues regarding the Plaintiff's treatment, causation, damages, as well as the Defendant's liability. Further answering, the Plaintiff has not yet identified an expert nor any particular fields of expertise necessary for this matter.

4) A summary of the claims or defenses with statutory and/or case citations supporting the same:

**ANSWER:** Negligence / Gross Negligence / Medical Malpractice. A physician commits malpractice by not exercising that degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances. *Durham v. Vinson*, 360 S.C. 639, 650-51, 62 S.E.2d 760, 766 (2004). Specifically, the plaintiff will show (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances, and (2) that the defendants departed from the recognized and generally accepted standards. *Pederson v. Gould*, 288 S.C. 141, 143-44, 341 S.E.2d 633, 634 (1986); *Cox v. Lund*, 286 S.C. 410, 414, 334 S.E.2d 116, 118 (1985). Also, the plaintiff will show that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. *Green v. Lilliewood*, 272 S.C. 186, 193, 249 S.E.2d 910, 913 (1978). The plaintiff will provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the Court agrees with the Plaintiff's assertion that the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants. *Pederson*, 288 S.C. at 143, 341 S.E.2d at 634. The Plaintiff has also sought punitive damages in this case, See, e.g.., Smith v. Wade, 461 U.S. 30, 49 (1983).

5) Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local civil Rule 16.02:

   a. Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures
   b. Completion of discovery

   **ANSWER:** This case is subject to the Scheduling Order entered on December 30, 2008.

6) The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order. *See generally* Local Civil Rule 16.02(C) (Content of Scheduling Order).

**ANSWER:** None known to the Plaintiff at this time, although the Plaintiff may need to seek an extension on the time to name experts in the event that the physicians in question are not made available by the Defendant.

7) The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise by the assigned judge.

**ANSWER:** No additional information at this time.

RESPECTFULLY SUBMITTED,


HUGHEY LAW FIRM LLC


/s D. Nathan Hughey
D. Nathan Hughey Fed. I.D. 7635
767 Coleman Blvd., Unit 2
Post Office Box 348
Mt. Pleasant, SC 294645-0348
(843)881-8644 (P)
(888)884-8311 (F)
nhughey@hugheylawfirm.com

Attorney for Plaintiff Ruth Simmons

_____2/3_____, 2009
Mt. Pleasant, South Carolina